Curia, per Dunkin, Chancellor.
The complainant and defendant are sons of Jesse Smith, who died intestate, about the year 1828. It is stated in the bill, which, for the purposes of this case, must be taken as true, that in 1814, the father of complainant gave him a tract of land, containing 321 acres, of which he put him in possession, and assisted him in erecting a dwelling house, and other improvements on the land, which the complainant has continued to occupy from that time, as absolute owner, and without interruption; that in the following year, his father caused a re-survey of his lands to be made by W. Hemingway, a surveyor, in which the tract given to the complainant was distinctly marked out and shaded with red lines. His father, however, never executed titles to him for the land, although his possession and enjoyment was uninterrupted from the time of the gift. After the father’s death, and in the year 1828, proceedings in partition were instituted in the Court of Common Pleas for Horry district, among the several heirs, and a writ was issued, after much delay, in 1831. The commissioners met, and both *132 the complainant, and the defendant, who was the administrator of his father, were also present. The complainant informed the commissioners of the gift, and the defendant also forbade them from including these lands, and the complainant left the commissioners under the impression that his lands were not to be included. The commissioners made no division, but recommended a sale of all the lands of the intestate, including those given to the complainant, which return wasconfirmed at the Fall Term, 1831. At the sale by the sheriff, the defendant attended, and made the same objections, (not to have the land of complainant sold,) which he had urged to the commissioners in partition. All the lands, including2,364 acres, were, however, sold by the sheriff,, and bid off by the defendant, for $490 25 cts. That the complainant was ignorant of all the proceedings after the meeting of the commissioners until he was informed that -the lands had been sold, and the whole purchased by his brother, the defendant. The defendant was unable to give the security required, and the sheriff was about to re-sell the lands. During the interval, the complainant saw the defendant, who assured him that he had not bid off the lands on his own account, but for the benefit of the heirs, to whom they had been given, and agreed, if the defendant would become his surety on the bond, and pay $31, which was his share of the sum necessary to pay the widow, he wrould execute a title to him for his tract. The complain» ant accordingly became surety on the bond, and afterwards paid the $31. On 9th May, 1832, the sheriff, Sessions, executed a title to the defendant for a body of land, including in the deed that of the complainant. As soon as the deed was executed and delivered to the defendant, he placed it, together with Hemingway’s plat, in the hands of Mr. Bryan, as the friend of the complainant, for the purpose of having a conveyance prepared, which the defendant promised to execute so soon as it was ready, directing Mr. Bryan, when the deed was prepared, to give it, together with Sessions’s deed and Hemingway’s plat, to the complainant. The deed was accordingly prepared and placed in the complainant’s hands, with the sheriff’s deed and the plat. The deed was tendered to the defendant for his signature, but he refused to execute it.
*133 In the following year, 1833, the complainant sued the defendant on a note of $123 68, which had been given to him by the defendant, as administrator of his father.
In a settlement of the personal estate, at that time, the $31 had not been paid by the complainant, and the defendant then agreed, that if the complainant would allow this discount, he would make him the title to the land. The matter was arranged by their counsel. . The discount was allowed, and so appears on the verdict. The defendant, so soon as the verdict was signed, instructed his counsel to prepare a deed to the complainant for the land, which he agreed to do, and the defendant (so soon as the Court adjourned,) was to call at his lodgings and execute it, and that the defendant, however, left the Court, and after-wards positively refused to execute the title.
The complainant still hoped that the defendant would comply; and as he was in possession of the land, which he had then, for twenty years, and the counsel was also in possession of the sheriff’s deed to the defendant, he apprehended no serious danger from the want of a conveyance from the defendant. But on 4th September, 1835, (the sheriff, Sessions, being then dead,) the defendant applied to his successor, Col. Beaty, and falsely and fraudulently representing to him, that his predecessor, Sessions, had executed no title, prevailed on him to execute a deed, pursuant to the provisions of an Act of Assembly, in such case made and provided. The defendant then instituted an action of trespass to try title, against the complainant, and obtained a verdict at Fall Term, 1838, with $60 damages and costs, and has lodged with the sheriff of Horry District, a writ of Habere facias possessionem cum fi. fa.
The bill was filed on 6th May, 1839, to compel a specific performance of the agreement, and an injunction against further proceedings on the judgment at law. The defendant relies on the plea of the statute of limitations, or, in the language of the plea, that the right to call on him for the specific performance existed more than four years previous to the time of exhibiting the bill, and that the defendant had not, at any time within four years before the filing of the bill, made any promise or agreement to execute titles to the said lands. The plea was allowed, *134 and the bill dismissed. From which decree, the complainant appealed, on the grounds stated in the notice. The remedy which the complainant seeks, is purely of an equitable character. So soon as the defendant refused to execute a title, he might, perhaps, have instituted a suit at law for damages, but if the complainant had never been disturbed in his possession, the damages would, probably, have been nominal. The serious cause of complaint, and the first direct invasion of his rights, was the institution of the proceedings at law, to try the title.
How far, and in what manner, this court is governed by the statute of limitations, has been often discussed. It is well stated by Lord Redesdale, in Bond vs. Hopkins, 1 Sch. & Lef. 428. “ The statute of limitations, does not apply in terms, to proceedings in courts of equity. It applies to particular actions at common law, and limits the time within which they shall be brought, according to the nature of those actions, but it does not say, there shall be no recovery in any other mode of proceeding”. In regard to equitable titles, courts of equity are to be considered as affected only by analogy, to the statute of limitations. It is afterwards said. “ Nothing is better established in courts of equity, than that, where a title exists in conscience, though there be none at law, relief should, though in a different mode, be given in equity.” If the party be guilty of such laches in prosecuting his equitable title as would bar him, if his title was solely at law, he shall be barred in equity; but that is all the operation the statute has, or ought to have, in procedings in equity. One acknowledged principle on which courts of equity give relief, is to prevent an advantage gained by law, from being used against conscience. In the same case, the Lord Chancellor remarks, “ but it is said that the bar arising from lapse of time, ought not to be removed; why not, as well as a satisfied term, if used against conscience'! But it is contended that the bar arising from the statute of limitations ought not to be removed, because the enactment of the statute is positive. The answer is, the positive enactment has nothing to do with the case. The question is not whether it shall operate in a case provided for by the positive enactment of the statute, but whether it shall operate in a case not pro- *135 Tided for by the words of the Act, and to which the Act can only apply, so far as it governs decisions in the courts of equity; that is, whether it shall prevent a court of equity from doing justice according to good conscience, where the equitable title is not barred by the lapse of time, although the legal title is so barred.”
After citing the case of McKenzie vs. Powis, 4 Bro. C. 328, in which, in an appeal to the House of Lords, it was held, not only that the statute should not run, pending the cause in equity, but that; from the circumstances of the case, it should be removed wholly out of the way; and in Pincke vs. Thornycroft, 1 Bro. C. C. 289; and 4 Bro. Parl. Ca. 92, on an analogous principle, he declares the practice of the courts to be well settled. The same principle he adds, is also established by what the court does upon the statute of frauds. The statute of frauds says, that no action or suit shall be maintained, in an agreement relating to lands, which is not in writing, signed by the party to be charged with it; and yet, the court is in the daily habit of relieving, where the party, seeking relief, has been put into a situation which makes it against conscience in the other party to insist on the want of writing so signed, as a bar to his relief. Courts of equity decide on equitable grounds, in contradiction to the positive enactment of the statute of frauds, though their proceedings are, in words, included in it; whereas, they are not included in the words of the enactment of the statute of limitations. In the case then, under consideration, the Lord Chancellor concluded, that, under the circumstances, he has no difficulty in holding, that the statute of limitations, in the manner it had been insisted on, should not operate as a bar, if the lapse of time, since the title to equitable relief began, did not prevent relief in equity on that title.
It is very questionable, whether the principle of the statute of limitations has any application to this case. The reason of the statute, may, perhaps, be recognized in what is said by the court, in Smith vs. Henry, 2 Bail. 118, that it is inconsistent with the ordinary conduct of men, having a moderate regard to their own interest, to permit another to enjoy without hire or compensation, that which belongs to them. When a right to recover a debt, or the *136 possession of property has been suffered, for years, to remain dormant, and another has been permitted to enjoy the money or property, it is presumed that the debt has been satisfied, and that the right of property has been transferred or relinquished. It is not intended as a punishment to the one, or a reward to the other. It has been called a statute of Repose, and its office is to protect, and not to disturb, the apparent ownership. How can this principle avail the complainant'? or why should it prejudice the claim of the defendant'? The latter has been always in the enjoyment of that which is his, or which he alleges to be his. His possession of the land has never been disturbed. Under his agreement with the defendant, he was entitled in this court, to a specific performance — to the execution and delivery of a deed of conveyance. The plea is, that this right existed more than four years prior to the filing of the bill, and that the defendant did not promise to execute a title at any time within four years. The statute protects the defendant, because it presumes he has complied with his promise, but has, perhaps, neglected to preserve the means of proving it. Admit this presumption, and the defendant must be held to have executed the title, which has been lost, and in consequence of which loss, he now seeks to avail himself of an unconscientious advantage by his verdict at law. The legal right of the complainant, was damages for non-performance of the agreement. So long as he was in possession of the land, he had sustained no damages. His equitable right, was to a deed of conveyance. Then, in the language of Lord Redesdale, is the complainant’s title to this equitable relief barred by the lapse of time 1 Many cases are to be found in the books, in which the court has refused to decree a specific performance, in consequence of delay to enforce the agreement, where much less time has elapsed than would bar the action at law. But it is believed that none can be found in which this objection was sustained, where the vendee has continued in possession under the agreement to convey.^ When a debt has been acknowledged, or a payment has been made, without any new undertaking, the statute is not permitted to bar the demand. When the original agreement to convey is admitted, the continued *137 possession of the vendee, may he regarded as a constant acknowledgment on the part of the vendor of his right to a conveyance. It, at least, precludes the presumption that his right has been waived, and repels the inference of a want of right to the land, from his omission to compel the execution of a conveyance.
Munro, for motion;
Ifarllee, contra.
In the judgment of the court, the statute of limitations is inapplicable to the claim of the complainant, and the lapse of time, under the circumstances of the case, is not such as to prevent the equitable relief of this court.
The decree of the Circuit Court is reversed, and the cause is remanded for a hearing on the merits.
BENJ. F. DUNKIN.